**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 27, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

OL PRIVATE COUNSEL, LLC, a
Utah limited liability company,

      Plaintiff - Appellant,

v.

EPHRAIM OLSON, an individual,

      Defendant - Appellee.

No. 25-4091
(D.C. No. 2:21-CV-00455-DBB)
(D. Utah)

_____

**ORDER AND JUDGMENT\***
_____

Before **EID**, **EBEL**, and **FEDERICO**, Circuit Judges.
_____

Thomas and Carolyn Olson were married for 40 years before Thomas

initiated divorce proceedings in 2020. This appeal concerns one of the many

legal disputes stemming from their divorce. Thomas and Carolyn's son,

Ephraim Olson, took client documents from his former employer OL Private

Counsel, LLC (OLPC), a law firm owned by his father. Ephraim provided

---

     \* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Federal Rule of
Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

these documents to his mother, who used them in proceedings related to her divorce in several jurisdictions, including Utah and Canada.

OLPC brought this action in Utah state court against Ephraim in the spring of 2021, alleging several tort and contract claims. After OLPC added a federal claim, Ephraim removed the suit to the District of Utah, and the case proceeded through several years of discovery. In 2024, fact discovery ended, and the parties filed cross-motions for summary judgment. Ephraim moved for summary judgment on all claims, arguing primarily that OLPC failed to allege a cognizable theory of damages under Utah law. OLPC moved for partial summary judgment on its conversion claim as to Ephraim's liability. Because the district court found that OLPC had no legal or equitable remedy available for its claims, the district court granted Ephraim's motion, denied OLPC's motion, and entered judgment for Ephraim. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

Thomas and Carolyn had been married for 40 years when Thomas initiated divorce proceedings on August 7, 2020. They owned substantial assets together, including homes in the United States, Canada, and Thailand, as well as several trusts. Thomas and Carolyn share several children, including Ephraim, Joshua Olson, Hyrum Olson, and Naomi Burton.

2

The Olson family is involved with several self-established entities, including OLPC, the Utah-based law firm owned by Thomas. Thomas is a director of OL Private Corporate Counsel International, LTD and OL Private Counsel PTE, LTD. He also has an unidentified role at International Tax Counsel (ITC), a Thailand-based firm established by his son, Joshua. Ephraim is an attorney and worked for OLPC from July 2014 to September 2019. Hyrum and Joshua both have roles at these entities, and Hyrum also provides legal services to his father regarding his divorce.

Tim Akaranapich was an employee of ITC in Thailand and worked together with Ephraim on OLPC matters during the time they were both employed by Olson-affiliated entities. Akaranapich resigned from ITC on May 14, 2020. In June 2020, Akaranapich spoke to Ephraim on Facebook about why he resigned. During this conversation, Ephraim asked Akaranapich if he had any documents concerning Thomas and Carolyn's trusts. Akaranapich told Ephraim that he had access to his old work emails and that he did not think OLPC knew that he still had access. Ephraim then asked Akaranapich for documents about specific trusts. Akaranapich sent him copies of trust documents for, among other entities, the Ruth Doxey Family Trust, Carolyn Olson Spousal Trust, and White Buffalo Trust. Akaranapich spoke to Carolyn directly a few days later and provided her with copies of the three trust documents he had already sent to

Ephraim, as well as copies of trust documents for the Olson Estate Trust, Waterton Land Trust, Thomas H. Olson Trust, George Whitehead Family Trust, Olson Manitoba Conservation Trust, and the William Bell Hardy Trust.

Documents that Akaranapich provided to Ephraim and Carolyn in June 2020 were later used in three separate legal proceedings in the United States and Canada. These included: (1) an action filed in Alberta, Canada by Carolyn against Thomas individually and as trustee of the Olson Estate and Waterton Land Trusts, in which an injunction issued on November 23, 2020; (2) an action filed in the Utah state court by Naomi Burton against Bruce Lemons, the settlor of the Waterton Land Trust, in March 2022; and (3) an action filed in Alberta, Canada by Carolyn and Naomi against Thomas, Bruce, Hyrum, Joshua, and others regarding the Waterton Land Trust in April 2022.

The separate proceedings all concerned Thomas and Carolyn's disputed assets in connection with their divorce. OLPC was not a party to any of the separate proceedings, but now asserts that its clients – Thomas, Bruce, Joshua, Hyrum, and several trusts – incurred legal fees in connection with those proceedings as a result of Ephraim's conduct.

OLPC brought this action against Ephraim in Utah state court on March 12, 2021, alleging six state law claims: conversion, breach of

contract, intentional interference with economic relations, breach of fiduciary duty, aiding and abetting conversion, and "injunctive relief." Aplt. App. I at 64, 71–76. On June 13, 2021, OLPC added a seventh claim for conspiracy to access private computer servers, brought under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. Ephraim then removed the case to the District of Utah on July 27, 2021, asserting federal question and supplemental jurisdiction because the CFAA claim allowed for removal on those bases. The case later proceeded into discovery.

Discovery revealed that between October 2022 and sometime in 2023, OLPC orally agreed to indemnify its clients (including Thomas, Bruce, Joshua, and Hyrum) for legal fees incurred in the three separate legal proceedings in Utah and Canada. OLPC disclosed these indemnification agreements and invoices from the relevant law firms to Ephraim in this litigation in 2024.

OLPC did not disclose its computation of damages until a few months prior to the close of fact discovery in 2024, when it produced a damages expert report, which described OLPC's damages as consisting solely of legal fees its clients incurred in the three separate proceedings. OLPC produced the invoices from three law firms associated with those proceedings at the close of fact discovery. Due to the last-minute disclosure, Ephraim was permitted to take an additional Rule 30(b)(6) deposition of OLPC regarding

its asserted damages. Thomas was OLPC's Rule 30(b)(6) witness. He testified at the deposition that OLPC had orally agreed – via a phone call placed by Thomas to Hyrum – to indemnify its clients, including himself and two of his sons, for legal fees incurred in the separate proceedings due to the disclosure of the trust documents. OLPC also retained a damages expert whose report said damages were $456,040, a figure calculated by adding up the sum total of the law firm invoices.

Ephraim filed a motion for summary judgment on January 31, 2025, in which he argued that he should prevail because, among several alternative grounds, OLPC's damages theory wasn't cognizable under Utah law or the CFAA. OLPC cross-moved for partial summary judgment on Ephraim's liability for the conversion claim that same day.

In opposition to Ephraim's motion, OLPC disclosed for the first time that it had also incurred $18,375 in damages in connection with its investigation into how the trust documents were taken from its computer servers. The district court excluded these investigation damages from consideration, finding that their late disclosure was prejudicial.

The district court granted Ephraim's motion for summary judgment, holding that OLPC's damages were attorney's fees that were not recoverable as consequential damages and that the Utah third-party exception to this rule did not apply. The district court also held that

6

injunctive relief was not available because OLPC failed to show irreparable harm since compensatory damages could remedy OLPC's injuries. The district court granted summary judgment to Ephraim on all claims due to the lack of a cognizable damages theory of recovery. The district court also denied OLPC's motion for summary judgment on the conversion claim for the same reasons. Judgment was entered for Ephraim on July 2, 2025. This appeal timely followed.

## II

OLPC challenges the district court's summary judgment rulings on appeal, raising three arguments: (1) the district court mischaracterized its purported damages as attorney's fees and should not have applied the American Rule, or alternatively, the third-party exception to the American Rule applies; (2) damages are not an element of conversion under Utah law; and (3) the court violated Rule 56(f) when it sua sponte granted summary judgment on a ground not briefed by the parties.

We review a district court's rulings on cross-motions for summary judgment de novo, apply the same standard as the district court, and view any inferences to be drawn from the record "in the light most favorable to the party who did not prevail." *Allen v. Sybase, Inc.*, 468 F.3d 642, 649 (10th Cir. 2006) (citation omitted); *see also D.K. v. United Behavioral Health*, 67

F.4th 1224, 1235 (10th Cir. 2023). Here, we draw all factual inferences in OLPC's favor.

## A

The district court dismissed all OLPC's claims because it found that OLPC's asserted consequential damages were for attorney's fees, which are barred from being claimed as damages by the American Rule, and that Utah's third-party exception to the American Rule didn't apply.[1] On appeal, OLPC asserts that the American Rule doesn't govern because it is claiming consequential damages "flowing from the loss of its confidential documents [] that merely 'take the form' of its clients' attorneys' fees." Op. Br. at 30. Alternatively, OLPC argues the third-party exception to the American Rule applies. Because the district court exercised supplemental jurisdiction over the state law claims, we apply the substantive law of Utah in our review. *See GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1201 (10th Cir. 2022)

---

[1] It appears the district court dismissed the federal CFAA claim on this basis as well. Under the CFAA, only damages meant to cure "technological harms . . . of the type unauthorized users cause to computer systems and data" are available. *Van Buren v. United States*, 593 U.S. 374, 392 (2021) (noting CFAA civil damages are meant to cure harms that flow from computer hacking). The district court didn't provide a separate explanation for why it found that CFAA damages were not established. Regardless, OLPC fails to assert any argument concerning this issue on appeal, so it is waived. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived." (quoting *Tran v. Trs. of State Colls.*, 355 F.3d 1263, 1266 (10th Cir. 2004))).

(citing *BancOklahoma Mortg. Corp v. Cap. Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999)).

The district court dismissed Ephraim's tort and contract claims for lack of a cognizable consequential damages theory, but we note that consequential damages are essentially interchangeable with special damages. That is, "special damages and consequential damages are two ways of naming the damages that 'occur as a natural consequence of the harm done.' 'Special damages' is generally the term used in tort law, while 'consequential damages' is typically used with contracts, though they are essentially synonymous." *USA Power, LLC v. PacifiCorp*, 372 P.3d 629, 663 n.128 (Utah 2016) (citations omitted). To claim consequential damages, a party must show that their damages were caused by the tort or breach, the damages were a foreseeable outcome, and the amount of damages has been proven with reasonable certainty. *See Trans-Western Petroleum, Inc. v. United States Gypsum Co.*, 379 P.3d 1200, 1207 (Utah 2016).

Attorney's fees are not normally recoverable as consequential or special damages, with limited exceptions, as attorney's fees in general are only recoverable "when provided for by statute or contract – the so-called American Rule." *PacifiCorp*, 372 P.3d at 662. One of those exceptions is the third-party litigation exception. *Id.* at 663 n.128 (citing *Collier v. Heinz*, 827 P.2d 982, 983–84 (Utah Ct. App. 1992)). "And the question at issue in cases

9

where attorney fees are sought as consequential damages pursuant to some exception to the American Rule is . . . whether they are foreseeable." *Id.* at 663.

The third-party litigation exception applies "when the natural consequence of one's negligence is another's involvement in a dispute with a third party." *South Sanpitch Co. v. Pack*, 765 P.2d 1279, 1282 (Utah Ct. App. 1988). In that case, "attorney fees reasonably incurred in resolving the dispute are recoverable from the negligent party as an element of damages." *Id.* "To recover under the third-party litigation exception, the plaintiff must seek attorney fees from the defendant whose action caused the third-party litigation." *Macris & Assocs., Inc. v. Neways, Inc.*, 60 P.3d 1176, 1180 (Utah Ct. App. 2002). A plaintiff may also seek fees under the third-party litigation exception from the successor or alter ego of the original defendant whose action caused the third-party litigation. *Id.* at 1180–81.

OLPC's primary argument on appeal is that the district court erred by applying the American Rule because it improperly conceptualized OLPC's damages as attorney's fees. Instead, OLPC asserts, the district court should have applied the traditional test for consequential damages. However, regardless of how the three law firm invoices at issue here are classified – as business losses or as attorney's fees – Ephraim's conduct did not cause OLPC to incur these expenses. OLPC was never required to

10

indemnify its clients for the improper use of these documents. Instead, Thomas voluntarily and orally agreed to reimburse himself, his sons, and other insiders for legal fees incurred in proceedings related to his own divorce years after Ephraim obtained documents from OLPC and after those proceedings were filed. He made these agreements during a "telephone call" to his son Hyrum, purportedly the trustee of OLPC's client, the Waterton Land Trust. Aplt. App. II at 129.

This is not a case where a law firm had preemptively and contractually agreed to indemnify a client for improper disclosure of their information, in which case payment of the client's legal invoices resulting from such improper disclosure could potentially be recovered as special or consequential damages. Rather, Thomas's post hoc oral indemnification agreement was not a foreseeable consequence of Ephraim's conduct. Thus, even assuming the American Rule does not bar recovery here, OLPC's asserted damages aren't recoverable as consequential or special damages.

We'll also briefly address OLPC's secondary argument, that the third-party exception to the American Rule applies to these claims. We disagree. OLPC, as the district court properly noted, is not a party to any of the three proceedings that it is seeking to recover legal fees for and, thus, has no "involvement in a dispute" with a third party resulting from Ephraim's conduct. *See South Sanpitch Co.*, 765 P.2d at 1282. OLPC argues for a less

11

"rigid" application of the third-party exception that focuses on the natural consequences of tortious actions rather than on "party status." Op. Br. at 39–42. But, as we just explained, OLPC's decision to pay its clients' legal fees was not a natural consequence of Ephraim's actions.

OLPC relies on *Macris* to support its argument for applying the third-party exception. In *Macris*, the alleged tortfeasor was an entity owned by two individuals and, after a breach of contract case was filed against it, sold its assets to a different entity. *Macris*, 60 P.3d at 1177. The plaintiff in the breach of contract case later brought a fraudulent conveyance action against the individual owners and the entity that purchased the tortfeasor's assets. *Id.* After years of litigation, the plaintiff sought attorney's fees incurred in the fraudulent conveyance action, which the trial court denied because it considered the third-party exception to be inapplicable to such actions. *Id.* at 1179. On appeal, the Utah Court of Appeals reversed, holding that the third-party exception was in fact applicable to that scenario. *Id.* at 1180. The Court of Appeals noted that the original, now-defunct entity was the tortfeasor that caused the dispute, but that the individual owners and the entity that purchased the assets could be recovered from under the third-party exception if the plaintiff successfully established that they were alter egos or successors of the tortfeasor entity. *Id.* at 1180–81.

12

However, contrary to OLPC's assertions, this reasoning does not allow an entity to recover fees incurred by others as a result of a tortfeasor's actions – even the tortfeasor's own successors and alter egos – where foreseeability and causation are not also present.[2] As we have explained above, OLPC was not required to indemnify its clients for the results of Ephraim's conduct, and OLPC's post-hoc indemnification agreement was not a foreseeable consequence of Ephraim's conduct. Because OLPC fails this initial hurdle, it makes no difference if OLPC became involved in "'undo[ing]' the harm Ephraim . . . caused" such that it could be sufficiently tied to its clients' litigation to qualify under the third-party exception. Op. Br. at 42.

Finally, we note that, practically speaking, Thomas appears to be using OLPC, his law firm, as a pass-through entity in this litigation to avoid the American Rule and recover legal fees for himself and his children. To

---

[2] OLPC argues briefly that we should certify to the Supreme Court of Utah the question of whether a plaintiff must be a party to the third-party proceeding to invoke the third-party litigation exception, asserting that "Utah law on this point is uncertain." Op. Br. at 45 n.6. We decline to do so. We see this question as beside the point. Also, OLPC never filed a motion in this court to certify the question, and this request was never raised before the district court. *See Gerson v. Logan River Academy*, 20 F.4th 1263, 1285 n.8 (10th Cir. 2021) ("[W]e generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court." (quoting *Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735, 738 (10th Cir. 2009))).

13

hold that OLPC can recover legal fees under these circumstances would eviscerate the American Rule, and we decline to embrace this theory of recovery.

## B

OLPC's second argument is that the district court erred when it denied OLPC's partial motion for summary judgment on conversion due to the lack of a cognizable damages theory, arguing that damages is not an element of conversion under Utah law. As an initial matter, the parties dispute whether civil plain error review applies to this argument. We find that it does, as OLPC never raised this argument before the district court, despite Ephraim's direct challenge to OLPC's conversion claim on that basis in his own summary judgment motion.[3] Instead of responding with an

---

[3] The dissent concludes that OLPC preserved this argument by "listing the elements of conversion" in its motion for summary judgment because the listed elements did not include damages. Dissent at 2. This assumes that damages is not an element of conversion under Utah law. But as explained in the plain error analysis, this conclusion is not certain from the existing Utah body of law. So, it was incumbent upon OLPC to raise this argument affirmatively before the district court in order preserve the argument. Legal arguments, such as the one asserted by OLPC here, cannot be preserved by vague and casual negative implication. *See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1141 (10th Cir. 2007) ("This Court will not consider a new theory advanced for the first time as an appellate issue, even a theory that is related to one that was presented to the district court. Nor does the 'vague and ambiguous' presentation of a theory before the trial court preserve that theory as an appellate issue." (citation omitted) (quoting *Okland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1314 n.4 (10th Cir. 1998))).

argument that conversion doesn't require damages, OLPC asserted that it in fact had "offered evidence to establish its [conversion] damages." Aplt. App. IX at 128–30. Accordingly, the district court ruled upon the issue of conversion damages, but without the benefit of OLPC's argument that it now raises on appeal. This amounts to forfeiture, so civil plain error applies. *See Butler v. Daimler Trucks North America, LLC*, 74 F.4th 1131, 1142 (10th Cir. 2023) (holding litigant's argument was forfeited when it was not raised before district court). Because OLPC "argue[d] for plain error" on this issue in its opening brief, we will exercise our discretion to review it. *See id.* at 1143 ("[W]e can review for plain error . . . only if the appellant argues for plain error and explains why the elements of plain error have been satisfied."). OLPC's arguments for reversal on plain-error fail in any case.

"Plain error is (1) error, (2) which is plain, (3) which affects substantial rights, (4) and which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1151 (10th Cir. 2012). Even when error is present, it is only plain when the error is "clear or obvious under current, well-settled law." *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1252 (10th Cir. 2021) (quoting *United States v. Faulkner*, 950 F.3d 670, 678 (10th Cir. 2019)). In a civil case, the appellant's burden to establish plain error is "extraordinary and nearly

15

insurmountable." *Somerlott*, 686 F.3d at 1151 (alterations omitted) (quoting *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 802 (10th Cir. 2001)). In particular, only in "those rare civil cases," such as "when physical liberty is [] at stake," will we find a manifest injustice sufficient to reverse for plain error. *Butler*, 74 F.4th at 1144. Here, even assuming OLPC has the better end of the argument that damages are not an element of conversion under Utah law, OLPC has failed to establish that this error is clear or obvious under well-settled law and that it would be a manifest injustice not to reverse the district court's judgment.[4]

OLPC has not pointed to any Utah authority that states outright that damages are not an element of conversion. Under Utah law, conversion is "an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 295–96 (Utah 1999) (quoting *Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958)). Conversion is generally considered a legal action, where damages would be the remedy that justifies the lawsuit, but it also "has been regarded . . . as

---

[4] The dissent would hold that damages is not an element of conversion under Utah law. Dissent at 4. Again, we assume OLPC may have the better argument on this question as we conduct a plain error analysis. However, we ultimately take no position on the merits of this question but instead find that any error was not plain, or clear and obvious, and thus fails prong two.

16

an action in which the court is competent to investigate and determine the equity of the case." 18 Am. Jur. 2d *Conversion* § 64. Nominal damages may be available for conversion in Utah where the fair value of the chattel cannot be reliably established. But these remedial principles of conversion are rooted in the traditional rule that equity will not run where there is an adequate remedy at law. *Utah Cnty. v. Baxter*, 635 P.2d 61, 64 (Utah 1981). OLPC has cited no authority for the general proposition that damages, a legal remedy, is not a threshold requirement to state a conversion claim (absent some circumstance where damages would be unavailable or inadequate). *See In re Estate of Knickerbocker*, 912 P.2d 969, 981–82 (Utah 1996) (finding no error where trial court awarded $2 in damages for fair value of rental furnishings); *State v. Ludlow*, 353 P.3d 179, 183 (Utah Ct. App. 2015) ("When a plaintiff presents evidence of purchase price without demonstrating market value, the plaintiff is entitled to only nominal damages.").

OLPC's strongest case on this point is *InnoSys, Inc. v. Mercer*, where the Supreme Court of Utah stated that a "trespass on a right of property is actionable upon any physical invasion of it, regardless of whether the invasion causes measurable damage." 364 P.3d 1013, 1020 (Utah 2015). However, the claim brought in *Mercer* was a trade secrets claim – because the "physical invasion" was the misappropriation and destruction of the

17

"secret," the Supreme Court of Utah held that irreparable harm was presumed despite no measurable physical damage. *Id.* at 1020–21. It is unclear how the Utah courts would map this principle onto conversion, which is an action for the interference with a chattel, usually tangible property. Because there is no well-settled law that OLPC has identified in support of its argument, any error here was not plain.

OLPC has also not established that the purported error affects the fairness, integrity, or public reputation of judicial proceedings. OLPC's argument for the fourth prong of plain error is that the district court's dismissal of its claim "flouts well-settled law about conversion claims" and "sends the message to wrongdoers . . . that property rights are only as protectable as the strength of a money damages claim." Op. Br. at 54–55. But more than "loss of [a] possibly meritorious claim" must be asserted to satisfy this prong of plain error in a civil case. *Somerlott*, 686 F.3d at 1152. Because OLPC has failed to "explain why this is one of those rare civil cases" where the district court's ruling presents a manifest injustice, we decline to reverse for plain error. *Butler*, 74 F.4th at 1144.

## C

OLPC's final argument on appeal is that the district court erred when it sua sponte held that injunctive relief was not available for its conversion claim on a theory that had not been addressed by the parties in their

18

summary judgment briefing. Op. Br. at 55–56. The district court found that OLPC had not shown irreparable harm because it "consistently argue[d] that its injuries can be remedied through compensatory damages." Aplt. App. XIII at 221. OLPC asserts this was error under Federal Rule of Civil Procedure 56(f) because, in the parties' briefing, they only disputed whether irreparable harm was caused by Ephraim's conduct.

Under Rule 56(f), a court may grant summary judgment on grounds not raised by a party "[a]fter giving notice and a reasonable time to respond." The Tenth Circuit "generally [doesn't] favor the granting of summary judgment *sua sponte*," but "a district court may do so if the losing party was on notice that she had to come forward with all of her evidence." *Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147, 1150 (10th Cir. 2017) (quoting *Johnson v. Weld County*, 594 F.3d 1202, 1214 (10th Cir. 2010)). Here, we find no Rule 56(f) error. Ephraim raised the issue of irreparable harm generally as grounds to attack injunctive relief for OLPC's conversion claim in the briefing on his motion for summary judgment. Thus, OLPC was on

19

notice that it had to marshal all its evidence relevant to irreparable harm.[5]

It is not the district court's error that OLPC failed to do so, especially considering OLPC affirmatively argued before the district court that it had "establish[ed] its damages" for conversion, which is contrary to its position before this court that damages need not be established before remedies are available for a conversion claim. Aplt. App. IX at 130.

---

[5] The dissent would find that the district court erred under Rule 56(f), reasoning that, while Ephraim did raise irreparable harm generally in his motion for summary judgment, he did not make the specific argument that OLPC's harm could be remedied by money damages. Dissent at 6. However, OLPC affirmatively argued that it was "entitled to injunctive relief" because it had "established damages and causation." Aplt. App. IX at 130. And the parties' briefing on Ephraim's motion almost entirely concerned OLPC's claimed economic loss. OLPC is a sophisticated party, represented by counsel, and should have been aware that economic loss, even if "established," did not render it irreparably harmed and, thus, did not entitle it to injunctive relief. *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) ("[I]rreparable harm is often suffered when 'the injury cannot be adequately atoned for in money.'" (quoting *A.O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976) (alterations accepted)). Indeed, the entire point of injunctive relief is to remedy harms for which the courts cannot fashion a legal remedy. *See id.* at 1250–51. Thus, Ephraim's challenge to OLPC's assertion of irreparable harm was sufficient notice to OLPC that its response to Ephraim's motion was the time to assert harm other than economic loss that it claimed to have suffered.

In sum, we find no basis to reverse the district court's rulings on the parties' cross-motions for summary judgment.

AFFIRMED.

Entered for the Court

Richard E.N. Federico
Circuit Judge

No. 25-4091, *Ol Private Counsel v. Olson*

**EID**, J., concurring in part and dissenting in part.

Ol Private Counsel ("OLPC") raises three arguments challenging the district court's ruling below:  (1) the district court erred in holding that OLPC could not recover litigation costs in the form of damages, (2) the district court erred in dismissing OLPC's conversion claim on the basis that OLPC could not show damages, and (3) the district court erred in dismissing OLPC's injunctive relief claim because by doing so it granted summary judgment on grounds not raised by a party.  I agree with the majority that OLPC cannot recover attorneys' fees by labeling these fees as consequential damages and therefore join Part II-A in full.  However, contrary to the majority's holding, I believe the district court erred when it dismissed OLPC's conversion claim and held that injunctive relief was not available.  I would reverse and remand on those two grounds and therefore dissent with regards to Parts II-B and II-C.  Accordingly, I concur in part and dissent in part.

## I.

## A.

The majority reviews OLPC's argument regarding conversion for plain error because it finds that this argument was never raised before the district court.  I disagree.

In order for a party to prove a claim is not forfeited, its opening brief must "cite the precise references in the record where the issue was raised and ruled on" in the district court.  *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) (citing 10th Cir. R. 28.1(A)).  OLPC points to its motion for summary judgment where it "expressly

recited the elements of conversion under Utah law." Aplt. Br. at 40 (citing App'x Vol. IV at 1010). OLPC argues that because none of these elements included a requirement for damages, a comprehensive recitation of these elements suffices as an argument that damages are not required.

I would hold that listing the elements of conversion in its motion for summary judgment was enough for OLPC to raise the argument that proving damages is not required to succeed on a conversion claim. OLPC explicitly stated that "[s]ummary judgment is appropriate when claimants establish undisputed facts as to *these elements* of conversion." App'x Vol. IV at 1010 (emphasis added). OLPC therefore made it clear that as long as these elements—which did not include a showing of damages—were met, OLPC was entitled to summary judgment on its conversion claim. While OLPC included a section on each element and the facts supporting it, it reserved the subject of damages "for another day," *id.* at 1013, which would not be possible if proving damages was required at the summary judgment stage. Because a comprehensive list of required elements necessarily excludes any requirements that are not listed, OLPC's motion for summary judgment was sufficient to give the district court notice of OLPC's position that a showing of damages was not required to succeed on a conversion claim.

The majority focuses on the fact that OLPC did not respond to "Ephraim's direct challenge to OLPC's conversion claim on th[e] basis [that OLPC had not shown damages as required.]" Maj. Op. at 14. However, Ephraim's challenge is not as direct as the majority makes it out to be. While Ephraim did state that "OLPC's other claims require damages as a necessary element," which would include conversion, the authority cited for

2

this claim, *Mahana v. Onyx Acceptance Corp.*, 96 P.3d 893 (Utah 2004), only addressed how damages were calculated, not whether proving damages is a required element for a conversion claim to succeed. *See* App'x Vol. I at 225 n.6 (citing *Mahana*, 96 P.3d at 827). And Ephraim did not cite any authority at all for his claim that OLPC's "conversion claims must fail" because OLPC has not shown damages. App'x Vol. I at 241. Given this lack of legal support, it was not unreasonable for OLPC to interpret this as a claim that OLPC cannot show damages, rather than an assertion that OLPC must prove damages to succeed on its claim. Ephraim cannot assert that he argued below "OLPC's claims fail as a matter of law because it did not disclose any recoverable damages," Aple. Br. at 42, when he did not cite any law to support this assertion.

Finally, Ephraim did not argue in his response to OLPC's motion for summary judgment that OLPC had incorrectly listed the elements of conversion. If damages truly were a required element to succeed on a conversion claim, then Ephraim's response should have argued that OLPC's list of elements was incomplete. The fact that he did not further demonstrates the lack of legal support for Ephraim's position and OLPC's justification for resting on its own, legally supported, assertion in its motion for summary judgment.

For the foregoing reasons, I would hold that OLPC's comprehensive discussion of the elements of conversion was sufficient to preserve the argument that damages are not a required element.

3

**B.**

Having established that OLPC has preserved this argument, I would determine that the district court's holding that a showing of damages is required to establish a conversion claim was wrong on the merits.

"We review the grant of summary judgment de novo, applying the same standard the district court should apply under Fed. R. Civ. P. 56(c)." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1218 (10th Cir. 2006) (quotation omitted). In evaluating OLPC's state law claims, we apply Utah law to matters of substantive law. *See In re ZAGG Inc. S'holder Derivative Action*, 826 F.3d 1222, 1228 (10th Cir. 2016).

Neither Ephraim nor the district court cited any legal authority to support the assertion that damages are required for conversion claims. The district court cited sources holding that every other legal claim brought by OLPC required damages but did not address conversion. Ephraim also did not cite any legal authority to support this assertion in the brief he submitted to this court, instead relying on the arguments made in his motion for summary judgment below. And as explained above, Ephraim's motion for summary judgment did not cite any authority that holds a showing of damages is a required element for conversion.

OLPC, on the other hand, provided multiple cases which laid out the elements of conversion, and these elements did not include damages. *See Fibro Tr., Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 295–96 (Utah 1999) ("A conversion is an act of wilful [sic] interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." (quotation marks omitted) (quoting *Allred*

4

*v. Hinkley*, 328 P.2d 726, 728 (Utah 1958))); *Rand v. KOA Campgrounds*, 338 P.3d 222, 225 (Utah Ct. App 2014).  OLPC also provided examples of cases where plaintiffs received nominal damages for conversion because they were unable to prove the actual amount of damages.  *See In re Est. of Knickerbocker*, 912 P.2d 969, 981–82 (Utah 1996); *State v. Ludlow*, 353 P.3d 179, 182–83 (Utah Ct. App. 2015).  These cases demonstrate that the calculation of damages for conversion is done separately from the determination of liability.[1]  Based on this precedent, I would hold that under Utah law, a showing of damages is not required to prove conversion.[2]

## II.

The majority also errs in affirming the district court's denial of injunctive relief because the district court justified this denial based on an argument not raised by either party.

## A.

A district court may grant summary judgment "on grounds not raised by a party" but only "[a]fter giving notice and a reasonable time to respond."  Fed. R. Civ.

---

[1] Ephraim argues that even if nominal damages are available, we should not remand solely for an award of nominal damages.  However, OLPC's conversion claim is directly tied to its request for injunctive relief.  As the district court correctly pointed out, injunctive relief is a remedy and not a separate cause of action.  Therefore, in order to receive injunctive relief, OLPC must prevail on its conversion claim.  Since the success of OLPC's conversion claim has ramifications beyond whether OLPC receives nominal damages, remand is appropriate here.

[2] Ephraim also argues that OLPC's claim must fail on the merits even if it does not need to include damages because, under Utah law, intangible property such as documents cannot be converted and wrongful possession of only copies of documents cannot give rise to a conversion claim if the rightful owner retains possession of the original.  I would remand for the district court to decide this question in the first instance.

P. 56(f)(2). However, "even if such notice is lacking, we will still affirm a grant of summary judgment if the losing party suffered no prejudice from the lack of notice." *Oldham v. O.K. Farms Inc.*, 871 F.3d 1147, 1150 (10th Cir. 2017) (quotation omitted). If the losing party can show prejudice, "we will reverse." *Id*.

The majority argues that since Ephraim raised the issue of irreparable harm generally in his motion for summary judgment, "OLPC was on notice that it had to marshal all its evidence relevant to irreparable harm" and "[i]t is not the district court's error that OLPC failed to do so." Maj. Op. at 20. However, the question here is not whether OLPC marshalled all its evidence, it is whether OLPC was required to respond to a legal argument that Ephraim did not make. I would hold that it was not, and that the district court therefore erred in denying injunctive relief on this ground.

Ephraim made a specific argument in his initial motion for summary judgment regarding why OLPC failed to establish irreparable harm: that "OLPC had failed to establish that Ephraim's actions played any role in the *Burton v. Lemons* matter, the Mareva Injunction matter, or the *Olson v. Olson* matter." App'x Vol. I at 244. As the non-moving party, OLPC's burden was "to confront a motion for summary judgment with affirmative evidence to show a genuine dispute of fact exists." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986). OLPC sought to meet this burden by providing evidence to dispute Ephraim's assertions that the theft of the documents did not play a role in the ensuing litigation. Importantly, OLPC was not seeking summary judgment on this issue, as it limited its summary judgment motion to conversion only. It was therefore reasonable for OLPC to focus its response to Ephraim's summary judgment motion on

6

refuting Ephraim's arguments.  *See Oldham*, 871 F.3d at 1051 ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B—a ground the movant might have presented but did not." (quotation marks omitted) (quoting *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989))).  OLPC had already stated in its complaint that Ephraim's "conversion of the Converted Documents has caused and will cause irreparable harm to [OLPC], for which money damages are inadequate."  App'x Vol. I at 110.  OLPC did not have notice that it had to make an additional argument regarding whether the harm it suffered could be compensated by damages in its response to Ephraim's motion when Ephraim had not made such an argument.

## B.

Having established the district court erred by deciding this issue on grounds not raised by a party, OLPC must also show prejudice.  In order to establish prejudice, OLPC "must, at the least, identify for the appellate court what additional arguments [it] could have made or evidence [it] could have produced or relied on to undermine the district court's ruling."  *Oldham*, 871 F.3d at 1051.

OLPC has presented such arguments, specifically arguing in its opening brief that the harm it suffered could not be compensated by damages because it can only be remedied by "ensuring that Ephraim can no longer retain, use, or share the confidential documents."  Aplt. Br. at 50.  OLPC accordingly argues that an injunction is necessary to prevent future use of these documents.  This argument undermines the district court's conclusion that OLPC's injuries could be redressed by damages since these damages

7

would only address past injuries.  Had OLPC been able to argue at the district court that

an injunction was necessary to prevent future harm, not only to remedy past harm, it may

have obtained a different result.  OLPC has therefore shown that its lack of opportunity to

make these arguments before the district court was prejudicial.[3]

## III.

For the foregoing reasons, I would hold the district court erred in dismissing

OLPC's conversion claim and in denying OLPC injunctive relief based on an argument

not raised by either party.  I respectfully dissent in regard to these matters.

---

[3] Ephraim also argues that because an injunction is an equitable remedy, not an independent cause of action, OLPC cannot obtain an injunction without succeeding on its conversion claim.  Ephraim is correct that OLPC's ability to obtain injunctive relief depends on the success of its conversion claim.  However, because I would remand this case to the district court to reconsider whether OLPC can succeed on its conversion claim, I would therefore instruct the district court to reconsider whether OLPC can obtain an injunction as well.